1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7
8

J & J SPORTS PRODUCTIONS, INC.,

Plaintiff,

9

v.

10

DAVID PLUNKETT, JR., et al.,

11

Defendants.

12

Case No.  5:15-cv-01609-EJD

**ORDER GRANTING PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 17

13

## I.   INTRODUCTION

14

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") is an international distributor of sports

15

and entertainment programming and secured the domestic commercial exhibition rights to

16

broadcast and sublicense one particular program, namely "Manny Pacquiao vs. Timothy Bradley

17

II, WBO Welterweight Championship Fight Program" (the "Event"), which was telecast

18

nationwide on April 12, 2014.  In this action, Plaintiff alleges that Defendants David Plunkett, Jr.,

19

Omar Miller and Barbers Barbershops, LLC, each doing business as The Barbers ("Defendants")

20

illegally intercepted and broadcasted the Event at their barbershop.

21

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331 and personal jurisdiction arises

22

from service on Defendant in California.  Burnham v. Super. Ct., 495 U.S. 604, 610-11 (1990).

23

Plaintiff filed the Complaint on April 8, 2015.  Defendant failed to answer and default was entered

24

by the Clerk on June 19, 2015.  See Docket Item No. 16.

25

Presently before the court is Plaintiff's application for default judgment.  See Docket Item

26

No. 17.  The court finds this matter suitable for decision without oral argument pursuant to Civil

27

Local Rule 7-1(b).  Accordingly, the hearing scheduled for September 24, 2015, will be vacated.

28

Case No.: 5:15-cv-01609-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1    Plaintiff's motion will be granted for the reasons explained below.

2    **II.    BACKGROUND**

3            As noted, Plaintiff is in this business of marketing and licensing commercial exhibitions of

4    pay-per-view prizefight events.  See Decl. of Joseph M. Gagliardi ("Gagliardi Decl."), Docket

5    Item No. 18, at ¶ 4.  Plaintiff was licensed to exhibit the Event at closed circuit locations located in

6    commercial establishments.  Id. at ¶ 5.  In order for commercial establishments to broadcast the

7    Event, owners were required to enter into a sublicense agreement with Plaintiff and pay a fee.  Id.

8    at ¶ 8.  The sublicense provided commercial establishments the ability to publicly exhibit the

9    Event.  Id. at ¶ 7.

10           On April 12, 2014, investigator Gary Gravelyn viewed a broadcast of the Event at

11   Defendants' commercial establishment, The Barbers, located in San Jose, California.  See Decl. of

12   Gary Gravelyn ("Gravelyn Decl."), Docket Item No. 17.  Based on Gravelyn's observations,

13   Plaintiff alleges that Defendants displayed the Event without obtaining the proper license.  See

14   Gagliardi Decl., at ¶ 9.

15           According to Gravelyn, Defendants were displaying an undercard event during the time he

16   was at The Barbers.  See Gravelyn Decl.  Plaintiff also owned the rights to distribute that

17   particular preliminary event.  See Gagliardi Decl., at ¶ 9.

18           Gravelyn states that Defendants broadcasted the Event on six televisions and that the

19   establishment's capacity was 100 persons.  See Gravelyn Decl.  Three separate headcounts

20   between 7:20 p.m. and 7:25 p.m. revealed the number of people in The Barbers fluctuated between

21   14 and 15.  Id.

22   **III.   LEGAL STANDARD**

23           Pursuant to Federal Rule of Civil Procedure 55(b), the court may enter default judgment

24   against a defendant who has failed to plead or otherwise defend an action.  "The district court's

25   decision whether to enter default judgment is a discretionary one."  Aldabe v. Aldabe, 616 F.2d

26   1089, 1092 (9th Cir. 1980).

27           The Ninth Circuit has provided seven factors for consideration by the district court to

28
2

United States District Court
Northern District of California

1  determine whether to enter a default judgment, known commonly as the <u>Eitel</u> factors.  They are:

2  (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3)

3  the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of

4  dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the

5  strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

6  <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  When assessing these factors, all

7  factual allegations in the complaint are taken as true, except those with regard to damages.

8  <u>Televideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987).

9  **IV.    DISCUSSION**

10      **A.    The <u>Eitel</u> Factors**

11          This court has previously found the <u>Eitel</u> factors weigh in favor of default judgment under

12  nearly identical circumstances.  The result here is the same.

13          As to the first factor, denying Plaintiff's application for default judgment would make little

14  sense since Defendants have refused to litigate this action.  The court would hear and review the

15  same evidence it has before it now if Plaintiff was required to prove up its case at an uncontested

16  trial.  For that reason, Plaintiff would be prejudiced in the form of further delay and expense if the

17  court were to deny the present application.  This factor weighs in favor of default judgment.

18          As to the second and third factors, Plaintiff's substantive claims appear meritorious and the

19  Complaint is sufficiently pled.  Plaintiff has alleged that Defendants violated two sections of Title

20  47 and the alleged activities of Defendants appear to have violated at least one of those sections.

21  Additionally, Plaintiff has stated relevant laws pursuant to which the court may provide relief.

22  These factors also weigh in favor of default judgment.

23          As to the fourth factor, the sum of money at stake has yet to be determined but the

24  damages cannot exceed the amounts specified in 47 U.S.C. § 553 (for reasons more fully

25  explained below), and the maximum amount allowable for the tort of conversion.  Accordingly,

26  statutory damages cannot exceed $10,000 and enhanced damages may not exceed $50,000.  See

27  47 U.S.C. § 553(c)(3)(A)(ii), (B).  Plaintiff is seeking $2,200 in damages for conversion, or the

28

Case No.: 5:15-cv-01609-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1    amount Defendants would have been required to pay for the license.  All things considered, the

2    relatively small sum of damages weighs in favor of default judgment.

3            As to the fifth factor, there is no dispute of material fact.  Indications that there is a dispute

4    of material fact can weigh against entry of default judgment.  See Eitel, 782 F.2d at 1471-72.  But

5    here, Defendants have not disputed any of Plaintiff's contentions since Defendants failed to

6    respond to either the Complaint or this motion, and the material facts pled in the Complaint are

7    supported or explained by affidavit or declaration.

8            For the sixth factor, it is unlikely that default was the result of excusable neglect.  This

9    action was filed nearly seven months ago and the docket reveals that Defendants were properly

10   noticed of this action through substitute service at the establishment.  In addition, Defendants were

11   served with a copy of instant application.  Defendants failed to respond despite these notifications.

12   This factor, therefore, weighs in favor of default judgment.

13           Finally, the seventh factor weighs in favor of default judgment because "although federal

14   policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations

15   such as this where defendants refuse to litigate."  J & J Sports Prods, Inc. v. Concepcion, No. 10-

16   CV-05092, 2011 U.S. Dist. LEXIS 60607, at *5, 2011 WL 2220101 (N.D. Cal. June 7, 2011).

17   Thus, the general policy in favor of merits decisions is outweighed by the specific considerations

18   made in this case.  As such, this factor does not prevent entry of default judgment here.

19           **B.     Calculation of Damages**

20                   **i.     Statutory Violation**

21           Plaintiff requests $10,000 in statutory damages as a result of an alleged violation of 47

22   U.S.C. § 605(e)(3)(B)(iii), which prohibits any person from receiving or transmitting "wire or

23   radio" signals except through authorized channels.  47 U.S.C. § 605(a).  More specifically, the

24   statute "'prohibits commercial establishments from intercepting and broadcasting to its patrons

25   satellite cable programming.'"  J & J Sports Prods., Inc. v. Ro, No. 09-CV-02860, 2010 U.S. Dist.

26   LEXIS 21425, at *7, 2010 WL 668065 (N.D. Cal. Feb. 19, 2010) (quoting J & J Sports Prods.,

27   Inc. v. Guzman, No. 08-CV-05469, 2009 U.S. Dist. LEXIS 32273, at *5, 2009 WL 1034218 (N.D.

28

Case No.: 5:15-cv-01609-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1  Cal. Apr. 16, 2009)).  The statute provides for statutory damages ranging from $1,000 to $10,000

2  for each violation.  47 U.S.C. § 605(e)(3)(C)(i)(II).

3          Plaintiff also mentions another potential basis for relief - 47 U.S.C. § 553(c)(3)(A)(ii) - but

4  does not directly request damages under that statute.  Plaintiff did, however, allege that

5  Defendants violated that statute in the Complaint.  Section 553 proscribes "a person from

6  'intercepting or receiving or assisting in intercepting or receiving any communications service

7  offered over a cable system.'"  Ro, 2010 U.S. Dist. LEXIS 21425, at *8 (quoting J & J Sports

8  Prods, Inc., v. Manzano, 2008 U.S. Dist. LEXIS 84931, at *5, 2008 WL 4542962 (N.D. Cal. Sept.

9  29, 2008)).  In essence, § 553 prohibits "both illegally receiving cable programming and helping

10  others to illegally receive cable programming."  Manzano, 2008 U.S. Dist. LEXIS 84931, at *5.

11  Statutory damages under Section 553 range from $250 to a maximum of $10,000, "as the court

12  considers just."  47 U.S.C. § 553(c)(3)(A)(ii).

13          Sections 605 and 553 are not coextensive because each section prohibits a distinct activity

14  of interception.  Indeed, "[a] signal pirate violates section 553 if he intercepts a cable signal, he

15  violates section 605 if he intercepts a satellite broadcast."  Ro, 2010 U.S. Dist. LEXIS 21425, at

16  *8.  "But he cannot violate both by a single act of interception."  Id. at *8.

17          Here, Plaintiff claims that Gravelyn was unable to determine the exact means used by

18  Defendants to intercept the Event.  But in fact, Gravelyn's declaration only leaves one option since

19  he definitively states that The Barbers did not have a satellite dish, but that a cable box was not

20  visible.  Under these circumstances, this court has found § 553 a more appropriate basis for the

21  calculation of damages.  See Joe Hand Promotions, Inc. v. Lorenzana, No. 5:13-cv-05925 EJD,

22  2014 U.S. Dist. LEXIS 110784, at *8-9, 2014 WL 3965097 (N.D. Cal. Aug. 11, 2014).  Thus, on

23  this showing, the court concludes that Defendant must have intercepted the program via a cable

24  signal in violation of § 553 and not § 605.

25          The court will award Plaintiff $250 in statutory damages under § 553.  This amount is

26  appropriate here, as it was in other cases, because Plaintiff did little if anything to develop the

27  factual record.  Plaintiff simply cannot rely on a five-minute visit by the investigator to justify a

Case No.: 5:15-cv-01609-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1    maximum damages award.

2         As to Plaintiff's request under § 553(c)(3)(B), enhanced damages of no more than $50,000

3    may be warranted if the court finds "that the violation was committed willfully and for purposes of

4    commercial advantage or private financial gain."  The Ninth Circuit has not set forth controlling

5    factors for the determination of when enhanced damages are appropriate in this context, but

6    various factors specific to this unique line of cases have been considered by district courts.  These

7    include the "use of cover charge, increase in food price during programming, presence of

8    advertisement, number of patrons, number of televisions used, and impact of the offender's

9    conduct on the claimant."  Concepcion, 2011 U.S. Dist. LEXIS 60607, at *10.  Enhanced damages

10   have also been awarded when the defendant has violated sections 605 or 553 on previous

11   occasions.  See J & J Sports Prods., Inc. v. Paniagua, No. 10-CV-05141-LHK, 2011 U.S. Dist.

12   LEXIS 33940, at *5-6, 2011 WL 996257 (N.D. Cal. Mar 21, 2011).

13        This case is somewhat dissimilar to others previously reviewed by this court because it

14   involves a barbershop rather than a restaurant.  But that aside, what is similar is the lack of any

15   indication that Defendants were motivated by any particular commercial or private financial gain

16   when they broadcasted the Event.

17        Plaintiff is entitled to $2,200 in enhanced damages, which represents the value of the

18   commercial license to air the program.  This amount properly accounts for the broadcast's impact

19   on Plaintiff and is sufficient deter future conduct by Defendants and other similarly-situated

20   establishments.

21        **ii.    Conversion**

22        Plaintiff requests damages for the tort of conversion in the amount Defendant would have

23   been required to pay for a license, or $2,200.  See Cal. Civ. Code § 3336.  "The elements of

24   conversion are: 1) ownership of a right to possession of property; 2) wrongful dissolution of the

25   property right of another; and 3) damages."  Paniagua, 2011 U.S. Dist. LEXIS 33940, at *6.

26   Damages for conversion are "based on the value of the property at the time of the conversion."  Id.

27        Here, Plaintiff has shown that it owns the right to distribute the Event and has properly

28

United States District Court
Northern District of California

6

alleged the misappropriation of the right to distribute the program.  As to damages, the "value of the property" was the value of the commercial license, or $2,200.  Accordingly, the court awards Plaintiff $2,200 in damages for conversion.

**V.     ORDER**

Based on the foregoing, Plaintiff's application for default judgment is GRANTED. Judgment shall be entered in favor of Plaintiff and against Defendant in the amount of $4,650.00 in total damages.

The hearing scheduled for September 24, 2015, is VACATED and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: September 21, 2015



EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No.: 5:15-cv-01609-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT